IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| PBM PARTNERS, LLC, A FLORIDA LIMITED LIABILITY COMPANY;<br><br>Plaintiff,<br><br>vs.<br><br>MEYER UNKOVIC & SCOTT, LLP, A PENNSYLVANIA LIMITED LIABILITY PARTNERSHIP; ROBERT E. DAUER JR., W. GRANT SCOTT II,<br><br>Defendants, | ) | Civil Action No. 2:25-CV-00537-CBB<br><br>United States Magistrate Judge Christopher B. Brown |

## MEMORANDUM OPINION AND ORDER ON MOTION TO COMPEL[1]

**Christopher B. Brown, United States Magistrate Judge**

### I. Introduction

PBM Partners, LLC ("PBM") brought this legal malpractice action against its former attorneys Robert Dauer, Grant Scott, and their firm Meyer Unkovic & Scott, LLP ("Defendants" or "MUS"). PBM alleges MUS committed legal malpractice in its handling of a dispute between PBM and its former tenant, FVP Smithfield, LLC ("Smithfield"). ECF No. 33. The malpractice claim stems from a $3.3 million default judgment PBM secured in a state court landlord-tenant action against Smithfield in 2021 when it was represented by MUS, only to have the judgment stricken and the matter reopened in 2024. *Id.* PBM claims it was denied the $3.3M

[1] Motions to compel the production of documents are non-dispositive motions under 28 U.S.C. § 636(b).

default judgment due to inadequate legal representation by their former counsel, MUS. *Id.*

On January 7, 2026, this Court held a status conference with the parties and, at its conclusion, ordered briefing on two issues related to the discovery dispute at issue here. ECF No. 39.

In summary, the dispute relates to MUS's request for the following discovery which PBM opposes: (1) documents related to defenses made in the underlying state court landlord-tenant action by Smithfield, which MUS argues are related to their affirmative defenses in the instant civil action pending before this Court; (2) MUS also seeks the file and communications of Attorney Moss, *i.e.* Plaintiff's counsel, with his current client PBM the former client of MUS "during the time period in 2024 when Attorney Moss and MUS overlapped in representing PBM in a dispute with [Smithfield]." ECF Nos. 40, 42. The matter has been briefed and is ripe for resolution. ECF Nos. 40-42.

As set forth below, MUS's request for documents related to Smithfield's defenses is GRANTED because they are relevant to the current dispute and MUS's affirmative defenses. MUS's request for Attorney Moss' filed is DENIED as the documents are protected from disclosure by attorney-client privilege. PBM is ordered to produce the documents related to Smithfield's defenses, and a privilege log for the documents it is withholding as privileged from Attorney Moss' file by **September 28, 2026.**

## II. Legal Standard

The general framework for determining the scope of allowable discovery for cases in federal courts is provided by Federal Rule of Civil Procedure 26(b), which provides as follows.

> **(b) Discovery Scope and Limits.**
>
> **(1) Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the actin, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
>
> **(2) Limitations on Frequency and Extent**.
>
> (A) *When permitted*. By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.
>
> (B) *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

> (C) *When required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b).

Generally, courts afford considerable latitude in discovery to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501. The polestar of discovery is relevance, which, for discovery purposes, is interpreted broadly. All relevant material is discoverable unless an applicable evidentiary privilege is asserted. *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). When there is no doubt about relevance, a court should tend toward permitting discovery. *Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (citing *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, at 556 (7th Cir. 1984)).

Federal Rule of Civil Procedure 34 requires a party served with a document request to either produce the requested documents or state a specific objection for each. The burden is upon the party objecting to discovery to state the grounds for

the objection with specificity. Fed.R.Civ.P. 34(b)(2); *Momah v. Albert Einstein Medical Center*, 164 F.R.D. 412, 417 (E.D. Pa. 1996). "Mere recitation of the familiar litany that an interrogatory or a document production request is overly broad, burdensome, oppressive and irrelevant will not suffice." *Id.* (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). The objecting party must demonstrate in specific terms why a particular discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982). The party attempting to withhold the release of relevant material for privilege must also "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A)(ii). Once an objection has been properly articulated, the burden rests with the party seeking discovery to show that a discovery request lies within the bounds of Rule 26. *Momah*, 164 F.R.D. at 417. Then, the party opposing discovery must convince the court why discovery should not be had. *Id.* (citing *Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 118–19 (N.D. Ind. 1991)).

Federal Rule of Civil Procedure 37 also allows a party who has received evasive or incomplete discovery responses to seek a court order compelling additional disclosure. "The party seeking the order to compel must demonstrate the relevance of the information sought. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within

the broad scope of discovery." *Option One Mortgage Corp. v. Fitzgerald*, No. 3:07-1877, 2009 WL 648986 at *2 (M.D. Pa. Mar.11, 2009).

## III. Discussion

MUS seeks documents related to Smithfield's defenses in the underlying action, and Attorney Moss' file during the time he served as co-counsel with MUS. ECF No. 40, 42. These are discussed in turn.

### a. Documents Related to Smithfield's Defenses in the Underlying Action

MUS first seeks discovery related to one of the defenses Smithfield raised in the underlying state court landlord-tenant action – specifically, related to the conduct of an individual named Michael Blum. ECF No. 40. In this respect, MUS's request for discovery is GRANTED.

According to PBM, Michael Blum was a manager of PBM.[2] ECF No. 41 at 2. Blum also later became a partner in Feenix Payment Systems, which in turn created Smithfield, a single-purpose entity created to lease space in PBM's building. *Id.* PBM points out that the lease was between PBM and Smithfield and that Blum was not a party to the lease. *Id.* Smithfield stopped paying rent and PBM retained MUS related to a landlord-tenant dispute which resulted in the entry of a $3.3M default judgement. *Id.* As stated previously, that judgment was later reopened at which time Smithfield alleged it was not obligated to pay for the lease because of Blum's "double dealing" conduct. *See, e.g.* ECF No. 40-2 at 10 ("No

2 It is also alleged that Blum was also the vice president of Smithfield. ECF No. 40 at 3.

payment is owed by [Smithfield] to [PBM] because of the wrongful acts and double-dealing of Plaintiff's Manager, Michael Blum").

In the underlying dispute, Smithfield raised the alleged misconduct of Michael Blum as a defense to paying for its lease with PBM. ECF No. 40-2. Here, MUS has also raised Blum's conduct as a potential affirmative defense to this legal malpractice action. ECF No. 35 at 12-13 (Twelfth Affirmative Defense).

In order to defend the legal malpractice claim against it, MUS is seeking discovery into whether PBM could have prevailed against Smithfield in the underlying action. ECF No. 40 at 3. *See also id.* at 2 ("A plaintiff must demonstrate that he or she would have prevailed (or achieved a desired outcome) in the underlying action in the absence of the defendant's alleged negligence") (citing *Myers v. Robert Lewis Seigle, P.C.*,751 A.2d 1182, 1185 (Pa. Super.), *app. den.*, 795 A.2d 978 (Pa. 2000)). It argues that Smithfield's defenses related to Blum are relevant to this question of whether PBM could have prevailed in the underlying action. *Id.* And, in fact, in the underlying case, Smithfield spent a lot of time discussing Blum's conduct in its defenses and in its New Matter. ECF No. 40-2 at 10-12. MUS argues it is entitled to this discovery because if Smithfield "would have been successful in fending off PBM's claims in the underlying case, PBM has lost nothing." ECF No. 40.

PBM counters that Smithfield's defenses in the underlying action are "not relevant to the pending legal malpractice action." ECF No. 41 at 2. First, PBM argues that since the underlying dispute involved a default judgment, Smithfield

could not have raised any affirmative defenses while the judgment was valid. *Id.* Second, PBM argues that even after the default judgment was overturned, PBM had no right to pursue a case against Smithfield in the first place. *Id.* at 3. Therefore, even after the judgment was reopened, "there was no legally cognizable claim to which [Smithfield] could have even raised an affirmative defense." *Id.*

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim <u>or defense</u> and is proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). Here, MUS has raised Blum's conduct as a potential affirmative defense. ECF No. 35 at 12-13 (Twelfth Affirmative Defense). Accordingly, this information is relevant and discoverable. *York Grp., Inc. v. Pontone*, No. 2:10-CV-1078, 2011 WL 13136188, at *1 (W.D. Pa. Dec. 15, 2011) (granting motion to compel into discovery related to affirmative defense).

PBM's argument to the contrary – that "there was no legally cognizable claim to which [Smithfield] could have even raised an affirmative defense" – goes to the heart of this legal malpractice issue. MUS is seeking further information on whether, in fact, PBM had a potential legally cognizable claim. *See* ECF No. 40 at 3 ("PBM was only denied a procedural default judgment. PBM's claim survived for further prosecution"). At this stage, it is not clear to the Court whether either Party's view of the underlying dispute is correct. That will become clearer through discovery. And, in any event, "[r]elevance is generally 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters

that could bear on, any issue that is *or may be in the case*.'" *Brewer v. Shea*, No. 2:20-CV-01203, 2024 WL 229741, at *4 (W.D. Pa. Jan. 22, 2024) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (emphasis added).

Accordingly, MUS's request for documents related to Smithfield's defenses in the underlying action is GRANTED. It is hereby ORDERED that within **thirty days**, or by **September 28, 2026**, PBM shall produce these documents to MUS.

**b. Attorney Moss' File**

MUS next seeks the file from PBM's current counsel, Attorney Moss, when he was co-counsel for PBM with MUS in the underlying landlord-tenant action. ECF No. 42. As set forth in more detail below, Attorney Moss' file in the underlying landlord-tenant action is protected by attorney-client privilege, and MUS's request is DENIED.

Here, MUS seeks the client file of Attorney Moss from January 2024-August 19, 2024 when he and MUS overlapped in representing PBM as co-counsel in the underlying landlord-tenant dispute. ECF No. 42 at 1. MUS seeks to learn "what factual information PBM provided to Attorney Moss, what goals were expressed by PBM, and what analysis and recommendations were provided about the very same dispute that MUS was handling simultaneously with Attorney Moss." *Id.* MUS later reiterates it "seeks knowledge of factual information provided by PBM to Attorney Moss and advice rendered." *Id.* at 6. In a footnote, MUS makes clear it is only seeking information from that limited time period and is not seeking anything from Moss' files after MUS's representation concluded nor seeking anything from

Attorney Moss' files during the present litigation. *Id.* at 1, n.1.

The attorney-client privilege generally protects confidential communications between an attorney and a client made for the purpose of obtaining legal advice. 42 Pa. C.S.A. § 5928. MUS concedes this point but argues PBM has waived this privilege by instituting this legal malpractice action. ECF No. 42 at 7-10. MUS argues that this is malpractice lawsuit places the communications of all of the lawyers at issue in this case. *Id.*

PBM responds that it has already produced all non-privileged information from Attorney Moss' file. ECF No. 41 at 3. PBM also argues it has not put Attorney Moss' communications at issue in this case and maintains these communications are protected by attorney-client privilege. *Id.* at 4.

Pennsylvania law governs the review of attorney-client privilege here since this is a diversity case. *Sandoz Inc. v. Lannett Co.*, 570 F. Supp. 3d 258, 263 (E.D. Pa. 2021). In Pennsylvania, "attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *O'Kinsky v. Perrone*, No. CIV.A. 10-6075, 2012 WL 4835316, at *1 (E.D. Pa. Oct. 11, 2012) (citing *Gillard v. AIG Ins. Co.,* 609 Pa. 65, 15 A.3d 44, 59 (Pa.2011)). *See also Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1424 (3d Cir. 1991) (stating that attorney-client privilege applies "only [to] those disclosures - necessary to obtain informed legal advice - which might not have been made absent the privilege").

The attorney-client privilege protects communications when: (1) the asserted holder of the privilege is or sought to become a client, (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer, (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort, and (4) the privilege has been (a) claimed and (b) not waived by the client. *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F. 3d 851, 862 (3d Cir. 1994). *See also* 42 Pa. C.S.A. § 5928.

The party claiming privilege bears the initial burden of proving the communication is privileged. *BouSamra v. Excela Health*, 210 A.3d 967, 982 (Pa. 2019). Once the party has established that privilege applies, the burden shifts to the seeking party to show that the privilege does not apply or has been waived. *Multiple Energy Techs., LLC v. Under Armour, Inc.*, No. 2:20-CV-664-NR, 2024 WL 4784112, at *6 (W.D. Pa. Nov. 14, 2024) (citing *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 390 (W.D. Pa. 2005)).

First, the Parties do not dispute that the communications between PBM as the client and Attorney Moss as the lawyer are protected by the attorney-client privilege. ECF No. 41 at 4; ECF No. 42 at 6. *See also* 42 Pa. C.S.A. § 5928. Accordingly, the burden shifts to MUS to show the privilege does not apply in this situation or has been waived. *Multiple Energy Techs.*, 2024 WL 4784112, at *6.

MUS's arguments are based primarily on case law from other jurisdictions, and it states that it "is not aware of any precedential Pennsylvania case in this precise context." ECF No. 42 at 5. The Court likewise found none.

Applying the rationale from non-binding authority, MUS argues the files should be produced because: (1) they contain factual information provided by PBM; (2) no privilege/confidentiality exists between co-counsel; and (3) PBM waived the attorney-client privilege by filing this legal malpractice action. These arguments are addressed in turn. *Id.* at 5-10.

**i. Factual Information**

MUS first argues that the information is not privileged because MUS "seeks knowledge of factual information provided by PBM to Attorney Moss and advice rendered." ECF No. 42 at 6.

The information MUS is seeking – what PBM presented to Attorney Moss as its goals for the underlying litigation, and what facts it thought were necessary to disclose to reach those goals – were given to Attorney Moss *for the purposes of receiving legal advice*. As set forth by the United States Supreme Court, attorney client privilege "exists to protect not only the giving of professional advice to those who can act on it *but also the giving of information to the lawyer* to enable him to give sound and informed advice." *Upjohn Co. v. U.S.,* 449 U.S. 383, 390 (1981) (emphasis added). And in Pennsylvania, when the client's "ultimate goal is legal advice," the attorney-client privilege protects "disclosures that are necessary to obtain informed legal advice which might not have been made absent the privilege."

*Com. v. Noll*, 662 A.2d 1123, 1126 (Pa. Super. Ct. 1995) (citing *In re Grand Jury Matter,* 147 F.R.D. 82, 84 (E.D.Pa. 1992)).

Courts consistently protect information presented to lawyers from clients, when, as here, the information was presented for the purposes of receiving legal advice. *See Salvio v. Allegheny Energy, Inc.,* No. CV 07-742, 2008 WL 11510576, at *1 (W.D. Pa. Mar. 7, 2008) (protecting attorney report from disclosure even where it contains factual information because "the fact that the report contains factual material 'does not undermine the privilege. Indeed, it is the exact communication of those facts that enabled counsel to provide legal advice, and the communication of those facts is privileged.'") (quoting *Upjohn,* 449 U.S. at 390); *Cedrone v. Unity Sav. Ass'n*, 103 F.R.D. 423, 427 (E.D. Pa. 1984) (". . . since all communications from a client to his/her attorney in a professional context are presumptively protected . . . those parts of her notes that reflect information received from the client are protected by the attorney-client privilege").

Accordingly, MUS's request for "factual information provided by PBM to Attorney Moss and advice rendered" is DENIED because this information is privileged.

**ii. Co-Counsel**

MUS next argues it is entitled to Attorney Moss' emails because they were working as co-counsel for PBM. ECF No. 52 at 6. It concedes there are no precedential Pennsylvania opinions supporting its position but argues that the

Court should adopt the practices of other districts that allow for disclosure between co-counsel. *Id.* at 3, 6-8.

First and foremost, it is well established in Pennsylvania that "[w]ithout a doubt, clients are free to choose, and to change representation at any time." *Huber v. Etkin*, 58 A.3d 772, 781 (PA Super. 2012) (citing *Mager v. Bultena*, 797 A.2d 948, 956 (Pa. Super. 2002)). It is PBM's prerogative, as the client, to choose how they want to use their counsel and how they wish to communicate with them. Forcing PBM to share information between the two firms would undermine PBM's ability to select its own counsel in the underlying litigation.

The Middle District of Pennsylvania also dealt with a similar situation, albeit in dicta. In *EMC Ins. Co. v. Zicolello*, a defendant in a legal malpractice action sought communications between its former client and a subsequent attorney. *EMC Ins. Co. v. Zicolello,* No. 4:13-CV-00825, 2014 WL 123687, at *3 (M.D. Pa. Jan. 14, 2014). The Court held that the files remained privileged because it could not conclude that the firms were actually co-counsel. *Id.* The Court went on to say, that "even if the Court concluded that [the firms] were indeed co-counsel and this arrangement was apparent to Plaintiffs, it does not necessarily follow that these circumstances would constitute waiver of the privilege. *Id.* (citing *Kroll & Tract v. Paris & Paris*, 86 Cal.Rptr.2d 78, 83 (Cal.App.1999) (holding that waiver of privilege as to one co-counsel by virtue of filing a malpractice action does not apply to those co-counsel who were not sued)). The Court finds this persuasive and in-line with established principles of attorney-client privilege – even if MUS and Attorney

Moss were co-counsel, it does not necessarily mean that MUS is entitled to Attorney Moss' file from this time period. MUS's motion to compel based on these grounds is therefore DENIED.

**iii. Waiver**

MUS's argument on co-counsel tracks closely with its final argument – that PBM waived attorney-client privilege by bringing this legal malpractice lawsuit against MUS. ECF No. 42 at 7. MUS further says that the "specific legal question posed to the Court is whether PBM, in asserting legal malpractice against one lawyer, may withhold facts provided to and advice rendered by another lawyer (whether Attorney Moss or others) on the very same subject matter that Plaintiff has placed 'at issue' in this case." *Id.* PBM maintains it has not waived its privilege with Attorney Moss. ECF No. 41 at 3-4.

It is well established that a client waives the attorney-client privilege by filing a legal malpractice claim. *Allstate Ins. Co. v. LaBrum & Doak*, No. CIV. A. 88-8448, 1989 WL 38666, at *2 (E.D. Pa. Apr. 18, 1989) (citing *Tasby v. United States,* 504 F.2d 332 (8th Cir.1974), *cert. denied,* 419 U.S. 1125 (1975)). This is a "subset of the broader principle that 'waiver of the privilege can occur . . . where a party voluntarily injects an issue into the case, the truthful resolution of which requires an examination of the confidential communications.'" *In re DiLoreto*, No. 9834641F, 2002 WL 34573858, at *8 (Bankr. E.D. Pa. May 3, 2002) (quoting *Jurgensen v. Rolex Watch U.S.A., Inc.*, 1989 WL 6210, *2 (E.D.Pa.1989)). In a malpractice action, waiver can either come from the client – in "averments found in

the complaint or in other aspects of the litigation" – or from the defendant, who is "entitled to disclose confidential information to the extent necessary to establish his defense to the malpractice action." *Id.*

The Parties do not dispute that PBM waived attorney client privilege as to its communications *with MUS* by bringing this legal malpractice action against them. ECF No. 41 at 4; ECF No. 42 at 7. The question is whether PBM's legal malpractice lawsuit against MUS also waives its privilege as to communications *between PBM and Attorney Moss.* Decisions in this Circuit guide the Court to its decision that PBM has not waived its privilege between PBM and Attorney Moss.

First, in a legal malpractice action, the Eastern District of Pennsylvania similarly held a plaintiff did not waive privilege with his former lawyer because the plaintiff "has not filed a claim against attorney Kaplan, but against defendant attorneys and parties, unaffiliated with Mr. Kaplan." *O'Kinsky v. Perrone*, No. CIV.A. 10-6075, 2012 WL 4835316, at *1 (E.D. Pa. Oct. 11, 2012). The Court held the conversations were privileged even though they were "regarding the transaction which is the subject of this legal malpractice action" – *i.e.,* relevance alone was not enough to overcome the privilege. And, as set forth above, the Middle District of Pennsylvania stated that because a plaintiff did not file a lawsuit against one of its attorneys or "attack his competence, there is no basis for the Court to find that Plaintiffs waived the privilege regarding confidential communications" between Plaintiffs and that attorney. *EMS*, 2014 WL 123687, at *2.

MUS has presented a number of cases from other district courts throughout the country on the subject of waiver. ECF No. 42 at 7-10. However, the Court finds the rationale of the cases cited from Pennsylvania district courts above to be more persuasive and in line with established principles of attorney-client privilege. In so doing, the Court determines that PBM has not waived its privilege with respect to Attorney Moss by filing a legal malpractice action against MUS. Accordingly, MUS's Motion to Compel the production of Attorney Moss' file on these grounds is DENIED.

**iv. Privilege Log**

PBM must produce a privilege log for the documents it is withholding as privileged from Attorney Moss' file.

Federal Rule of Civil Procedure 26 states that "When a party withholds information otherwise discoverable by claiming that the information is privileged" the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the claim." FRCP 26(b)(5)(A). *See also Graham v. Progressive Direct Ins. Co.*, No. CV 09-969, 2010 WL 11469535, at *4 (W.D. Pa. Nov. 1, 2010) ("Rule 26(b)(5)(A)(ii) requires that a party raising a privilege as a defense to production do so in a privilege log").

Based on the Parties' briefing, it appears that PBM has not produced a privilege log. Accordingly, by **September 28, 2026,** it is ORDERED that PBM shall

produce a privilege log for the documents it is withholding as privileged Attorney Moss' file in accordance with Federal Rule of Civil Procedure 26(b)(5)(A).

## IV. Conclusion

For the reasons stated above, MUS's Motion to Compel is granted in part and denied in part:

- MUS's request for documents related to Smithfield's defenses in the underlying action is granted. PBM shall produce these documents by **September 28, 2026.**
- MUS's request for Attorney Moss' file is denied, as the documents are protected from disclosure by attorney client privilege.
- PBM shall produce a privilege log in accordance with Federal Rule of Civil Procedure 26(b)(5)(A) by **September 28, 2026.**

DATED this 28th day of August, 2026.

BY THE COURT:

s/Christopher B. Brown
United States Magistrate Judge

CC: All counsel of record, *via ECF*